UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CIVIL ACTION NO. 5:10-CV-00069-KKC

APEX CONTRACTING, INC.                                                                             PLAINTIFF

v.                              **MEMORANDUM OPINION AND ORDER**

CHARLES G. ALLEN CONTRACTING
COMPANY, INC., *et al.*                                                                              DEFENDANTS

\* \* \*   \* \* \*   \* \* \*   \* \* \*

This matter is before the Court on Defendants' Motion to Dismiss [DE 44] for lack of personal jurisdiction. For the following reasons, Defendants' motion is **DENIED**.

**I.     BACKGROUND**

Charles G. Allen Contracting, Inc. ("CGAC"), an Arkansas Corporation, was awarded a contract to build three cell towers at different locations in Kentucky. CGAC subcontracted some of the work on the Kentucky cell towers to Apex Contracting, Inc. ("Apex"), a Kentucky Corporation. CGAC did not pay Apex for its work. Subsequently, in an action before this Court, Apex obtained a default judgment against CGAC in the amount of $94,304.79. [DE 17]. To satisfy the judgment, Apex garnished CGAC's bank account, but was able to secure only $44.16.

Apex initiated supplemental proceedings against Defendants seeking recovery for alleged violations of the Kentucky Fraudulent Transfer Act. Apex claims that CGAC's owners and directors, Defendants Grady Wahlquist, Sammy Crabtree and Harry Darner,[1] fraudulently

---

[1] Grady Wahlquist was CGAC's President for Organizational Development, Sammy Crabtree was CGAC's President of Civil Construction and Harry Darner was CGAC's Chief Financial Officer.

1

transferred funds to themselves and other entities they controlled. Apex alleges that Wahlquist, Crabtree and Darner (the "individual Defendants") were fraudulently paid $78,000 as dividends and that Darner and Crabtree fraudulently received $27,000 from CGAC for no documented consideration. Additionally, Apex alleges that the individual Defendants, as owners and directors of CGAC, fraudulently transferred CGAC funds to their alter egos, Defendants Agorluft East Division Inc. ("Agorluft") and Liberty Wireless Facilities LLC ("Liberty Wireless"). No Defendant resides in Kentucky and none of the alleged fraudulent transfers occurred in Kentucky.

The individual Defendants, Liberty Wireless and Agorluft (collectively "Defendants") moved to dismiss the supplemental proceeding for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). [DE 44].

## II.    ANALYSIS

The plaintiff bears the burden of establishing that personal jurisdiction exists. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). A district court may use its discretion and decide the motion upon affidavits alone. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). When relying on affidavits alone, the burden on the plaintiff is "relatively slight," *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988), and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal," *Theunissen*, 935 F.2d at 1458. The pleadings and affidavits must be viewed in the light most favorable to the plaintiff. *Air Products and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional

notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

In a diversity case such as this, the Court must look to the law of Kentucky to determine the reach of the Court's personal jurisdiction over the parties, subject to constitutional due process limitations. *Air Product Controls, Inc.*, 503 F.3d at 550. First, the Court must determine whether Kentucky's long-arm statute authorizes personal jurisdiction over Defendants. Next, the Court must determine whether exercising that jurisdiction violates constitutional due process. *Id.*

### A.  Kentucky Long-Arm Statute

Kentucky's long-arm statute "should be liberally construed in favor of long-arm jurisdiction," but should not "*per se,* be constructed as coextensive with the limits of federal due process." *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011). The long-arm statute authorizes a court to "exercise personal jurisdiction over a person who directly or by an agent . . . [t]ransact[s] any business in this Commonwealth" if the claim arises from that conduct. K.R.S. 454.210(2)(a)(1).

CGAC undoubtedly transacted business in the Commonwealth, but the issue here is whether the three individual Defendants transacted business in the Commonwealth. Each individual Defendant transacted business in the Commonwealth by personally contributing to, overseeing and managing CGAC's relationship with Apex to build cell towers in Kentucky. Apex's Area Manager and CGAC's on-site representative, both located in Kentucky, copied Defendants Crabtree and Wahlquist on e-mails about the progress of the three Kentucky cell tower projects. [DE 54].

Michael Stricker, a CGAC employee who secured the contract to build the Kentucky cell towers, "participated in conference calls with Mr. Wahlquist, Mr. Crabtree, and Mr. Darner and

3

updated them on the projects." [DE 53 at 2]. Stricker's affidavit says that he "had telephone conferences with [the three individual Defendants] in which we discussed how [the Kentucky] sites would be developed, and decided who CGAC would hire as a subcontractor to do the work." [DE 53 at 3]. Wahlquist, Crabtree and Darner "decided to hire Apex Contracting, Inc." [DE 53 at 3]. Additionally, Darner "signed and issue[d] the Purchase Orders for the projects" and "was responsible for approving any payments made to Apex for its work." [DE 53 at 3]. Stricker "reported to Grady Wahlquist, Sammy Crabtree, and Harry Darner about Apex's work on the . . . Kentucky project, and followed up with them regarding matters involving these projects." [DE 53 at 3-4].

On behalf of CGAC, Defendant Harry Darner executed purchase orders for Apex's work in Kentucky. [DE 55 at 2]. Upon Darner's request, Apex submitted invoices totaling $106,407.50 to CGAC for its work in Kentucky. [DE 55 at 2]. Darner called Apex's marketing director, and told him "that he was in charge of all vendor payments, and that he would determine whether Apex was paid." [DE 55 at 3]. Darner sent a check to Apex for $20,000.00, less than the $106,407.50 that CGAC owed Apex. [DE 55 at 3]. The evidence in the affidavits establish that Wahlquist, Crabtree and Darner all transacted business in the Commonwealth.

Next, to exercise personal jurisdiction under Kentucky's long-arm statute, "the wrongful acts of the defendant alleged in the plaintiff's complaint must originate from the actions or activities that form the applicable statutory predicate for assertion of long-arm jurisdiction." *Caesars Riverboat Casino, LLC*, 336 S.W.3d at 58-59. There must be a "reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction." *Id.* at 59. This is a "common sense analysis, giving the benefit of the doubt in favor of jurisdiction." *Id.*

4

Defendants' alleged wrongful acts, the fraudulent transfers, "originate" from the actions that form the statutory predicate for the assertion of long-arm jurisdiction. The individual Defendants created and managed CGAC's business relationship with Apex and personally contributed to the creation of a debtor-creditor relationship between CGAC and Apex. Apex alleges that Defendants fraudulently transferred money from CGAC to avoid payment to Apex. "One element of [Apex's] cause of action for fraudulent transfer is that there be a debtor-creditor relationship, which, as just explained, was made possible by and would not have existed but for Defendants' business relationship with [Apex]." *Air Products and Controls, Inc.*, 503 F.3d at 553. Kentucky has long-arm jurisdiction over the individual Defendants because they transacted business in Kentucky and Plaintiff's claims against them originate from those transactions.

### B. Due Process

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has not established meaningful 'contacts, ties or relations.'" *Burger King v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 319). The Court may acquire personal jurisdiction over a defendant in two ways: general jurisdiction or specific jurisdiction. *Kerry Steel, Inc. v Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). Apex argues that the Court has specific jurisdiction over Defendants. Specific jurisdiction applies "only on claims that arise out of or relate to a defendant's contacts with the forum." *Id.* (internal quotation marks omitted).

The Sixth Circuit has established a three-part test for determining whether specific jurisdiction may be exercised:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of

5

>the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968).

### 1. Purposeful Availment

"It is often repeated that the first prong—purposeful availment— is the 'sine qua non for in personam jurisdiction.'" *Air Products and Controls, Inc.*, 503 F.3d at 550 (quoting *S. Mach. Co.,* 401 F.2d at 381-82). "The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks and citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Id.* "[P]hysical presence in a forum state is not required." *Air Products and Controls, Inc.*, 503 F.3d at 551. A single act can support jurisdiction so long as it creates a "substantial connection" with the forum rather than an "attenuated" one. *Burger King*, 471 U.S. at 476 n.18. In sum, there must be a "relationship among the defendant, the forum, and the litigation" to exercise specific jurisdiction over a defendant. *Helicopteros Nacionales de Columbia, S.A.*, *v. Hall*, 466 U.S. 408, 414 (1984).

It is undisputed that Kentucky has personal jurisdiction over CGAC, but "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)). However, "the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those

6

defendants." *Balance Dynamics Corp.*, 204 F.3d at 698. The Court must look at whether the "out-of-state agent is actively and personally involved in the conduct giving rise to the claim" and if so, "the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.* whether []he purposefully availed [him]self of the forum and the reasonably foreseeable consequences of that availment." *Id.* (citing *Burger King Corp.,* 471 U.S. at 474; *Int'l Shoe Co.*, 326 U.S. at 316). Therefore, the Court must determine whether the individual Defendants were "actively and personally" involved in CGAC's relationship with Apex and Kentucky and whether those actions constitute purposeful availment.

For the same reasons that the individual Defendants transacted business in Kentucky, the individual Defendants were actively and personally involved in CGAC's contract with Apex to build cell towers in Kentucky and alleged fraudulent transfers. Michael Stricker "participated in conference calls with Mr. Wahlquist, Mr. Crabtree, and Mr. Darner and updated them on the projects." [DE 53 at 2]. Stricker "had telephone conferences" with the three individual Defendants, where they "discussed how these sites would be developed, and decided who CGAC would hire as a subcontractor to do the work." [DE 53 at 3]. Wahlquist, Crabtree and Darner "decided to hire Apex Contracting, Inc." [DE 53 at 3]. Stricker "reported to Grady Wahlquist, Sammy Crabtree, and Harry Darner about Apex's work on the . . . Kentucky project and followed up with them regarding matters involving these projects." [DE 53 at 3-4].

Defendant Harry Darner executed CGAC's purchase orders for Apex's work. [DE 55 at 2]. Upon Darner's request, Apex submitted involves to CGAC totaling $106,407.50. [DE 55 at 2]. Harry Darner called the marketing director for Apex, and told him "that he was in charge of all vendor payments, and that he would determine whether Apex was paid." [DE 55 at 3]. Mr.

7

Darner sent a check to Apex for $20,000.00, less than the $106,407.50 Apex was owed. [DE 55 at 3].

The affidavits show that the individual Defendants personally decided to hire a Kentucky corporation to help build cell towers in Kentucky. The individual Defendants were personally and actively involved in the relationship with Apex primarily through Stricker who reported to them about Apex's work. Finally, Defendant Darner was personally involved and primarily responsible for the payment dispute with Apex that started this lawsuit.

Defendants argue that they were not actively and personally involved in the dealings between CGAC and Apex because Michael Stricker negotiated the contract with Apex, personally met with Apex and was CGAC's principal contact with Apex. [DE 44-1 at 6-7]. The fact that another CGAC employee was more actively and personally involved in CGAC's relationship with Apex than Defendants does not preclude them from also being actively and personally involved. Whether Defendants' personal contacts with Apex and Kentucky, standing alone, are sufficient to satisfy the purposeful availment prong is a difficult question. That question, however, need not be answered because Defendants' contacts with Kentucky are "enhanced" by the "effects test."

The "effects test" was established in *Calder v. Jones*, where two Florida residents, a writer and an editor for the *National Enquirer* magazine were subject to personal jurisdiction in California because they intentionally aimed tortious conduct (an alleged defamatory article) at a California resident, entertainer Shirley Jones. 465 U.S. 783, 788-89 (1984). Even though the article was written and edited in Florida, the defendants were subject to personal jurisdiction in California because they knew that the focal point of the article as well as the "brunt of the harm"

would be in California. *Id.* Jurisdiction in California was "based on the 'effects' of their Florida conduct in California." *Id.* at 789.

The Sixth Circuit has "narrowed the application of the *Calder* 'effects test,' such that the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Air Products and Controls, Inc.*, 503 F.3d at 552 (citing *Scotts Co. v. Aventis S.A.*, 145 F. App'x 109, 113 n.1 (6th Cir. 2005)). "Although the 'effects test' has been limited, the existence of intentional tortious conduct nonetheless 'enhances' a party's other contacts with the forum state for purposes of a purposeful availment analysis." *Id.* at 552-53.

In this case, Apex alleges that Defendants knew their company owed a debt to Apex "*at the time* it engaged in the allegedly fraudulent transfer[s] and . . . that Defendants transferred the assets with the intent to hinder, delay or defraud" Apex. *Id.* at 553. Defendants knew that Apex had its principal place of business in Kentucky and knew that the focal point of their actions and the brunt of the harm would be in Kentucky. Therefore, pursuant to the effects test, Defendants' contacts with Kentucky are enhanced.

Defendants' contacts with Kentucky were not the result of unilateral activity on the part of Apex and were made for the purpose of continuing and managing the parties' business relationship. *See id.* at 552. After enhancing Defendants' contacts with Kentucky under the "effects test," Defendants purposefully availed themselves to Kentucky. Defendants' contacts with Kentucky are not so attenuated that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. Defendants who are alleged to have fraudulently transfer assets to avoid paying an out-of-state debt have been found to have purposefully availed themselves to the state where the debt was to be paid. *See Air Products and Controls, Inc.*, 503

9

F.3d at 550-53; *Fifth Third Bank v. Gentile*, No. 1:08-CV-52, 2008 WL 2390780, at *7 (N.D. Ohio June 9, 2008); *Pig Boys Inc. v. All Star Catering LLC*, No. 2:11-cv-78, 2011 WL 4825323, at *2-3 (D. Utah Oct. 11, 2011).

Defendants argue that they did not purposefully avail themselves to Kentucky relying on *Children's Orchard v. Children's Orchard Store,* No. 10-10143, 2010 WL 2232440 (E.D. Mich. May 28, 2010) and *Intera Corp. v. Henderson*, 428 F.3d 605 (6th Cir. 2005). Those cases, however, are distinguishable. First, *Children's Orchard* involved an arms-length transaction in Nevada that had an effect in Michigan, not out-of-state fraudulent transfers. *Children's Orchard*, 2010 WL 2232440 at *5. Additionally, there was no evidence that the defendants "made phone calls or trips to Michigan," knew that the "brunt of the harm would be felt in Michigan . . . or that the focal point of their actions would be outside Nevada." *Children's Orchard*, 2010 WL 2232440 at *7 (internal quotation marks omitted). Moreover, in a related case, there was personal jurisdiction over an insider defendant because the insider defendant was or should have been aware of the contractual obligations to the plaintiff and Michigan. *Children's Orchard, Inc. v. Jaecke*, No. 10-14379, 2011 WL 653645 at *4 (E.D. Mich. Feb. 14, 2011). Here, Defendants knew the focal point of their conduct would be in Kentucky and they were aware of CGAC's contractual obligations to Apex and Kentucky. Contrary to Defendants' arguments, the *Children's Orchard* series of cases actually supports finding personal jurisdiction over Defendants.

Next, unlike Defendants in this case, the defendants in *Intera Corp* did not "transact[] business" in the forum state. 428 F.3d at 617. Additionally, the *Intera Corp.* defendants did not "make telephone calls, or sent facsimiles to Tennessee." *Id.* In this case, however, Defendants

personally transacted business in Kentucky by making the decision to hire a Kentucky subcontractor and by communicating with and advising Stricker.

### 2. Arising From

*Southern Machine's* second prong is that the plaintiff's cause of action must "arise from" the defendant's contacts with the forum state. The standard for this prong has been articulated in different ways, "such as whether the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts, or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state. *Air Products and Controls, Inc.*, 503 F.3d at 553 (citations omitted). The standard is a "lenient standard" and "the cause of action need not 'formally' arise from defendant's contacts." *Id.*

Plaintiff's cause of action arises from Defendants' contacts with Kentucky, because if Defendants did not subcontract the Kentucky cell tower projects to Apex, "they would not have accrued the debt or had a judgment entered against them, and [Apex] could have no claim for fraudulent transfer." *Air Products and Controls, Inc.*, 503 F.3d at 553. "One element of [Apex's] cause of action for fraudulent transfer is that there be a debtor-creditor relationship which . . . was made possible by and would not have existed but for Defendants' business relationship with [Apex]." *Id.*

### 3. Reasonableness

*Southern Machine's* third prong is that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach.*, 401 F.2d at 381. If the first two prongs are met then "an inference of reasonableness arises" and "only the unusual case will not meet this third criteria." *Air Products and Controls, Inc.*, 503 F.3d at 554 (quoting *Theunissen*,

11

935 F.2d at 1461). Because Defendants' alleged conduct was purposefully directed at forum residents, they "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (quoting *Burger King*, 471 U.S. at 477). To determine whether the exercise of jurisdiction is reasonable, the Court should consider "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief and (4) other states' interest in securing the most efficient resolution of the policy." *Air Products and Controls, Inc.*, 503 F.3d at 554-55 (citing *Intera Corp.*, 428 F.3d at 618).

Although Defendants will have to travel to Kentucky to defend themselves, they have not presented a compelling case that would render jurisdiction unreasonable. Defendants received a contract to build cell towers in Kentucky and subcontracted some of that work to Apex, a Kentucky corporation. Without question, Kentucky has a substantial interest in enforcing its judgment and making sure its citizens are made whole. Additionally, Plaintiffs have an interest in recovering on their judgment and it is not efficient to force Apex to sue Wahlquist in Missouri, Darner in Louisiana, and Crabtree in Arkansas. *See Pig Boys*, 2011 WL 4825323 at *3.

    4.  <u>Alter Ego</u>

Thus far, the Court has discussed personal jurisdiction over only the three individual defendants, not Liberty Wireless Facilities or Agorluft East Division. Plaintiffs argue that Liberty Wireless and Agorluft are Defendants' alter egos. Defendants argue that there is no personal jurisdiction over Liberty Wireless and Agorluft "under an alter ego theory because [personal jurisdiction] does not exist on Wahlquist, Darner and Crabtree." [DE 56 at 8].

"[I]t is compatible with due process . . . to exercise personal jurisdiction over . . . a corporation that would not ordinarily be subject to personal jurisdiction . . . when the . . . corporation is an alter ego or successor of a corporation that would be subject to personal

jurisdiction . . . ." *Estate of Thompson v. Toyota Motor Corp.*, 545 F.3d 357, 362 (6th Cir. 2008) (quoting *Patin v. Thoroughbred Power Boats Inc.,* 294 F.3d 640, 653 (5th Cir. 2002)). An alter ego exists where "there is (1) such a unity of ownership and interest that the separate personalities of the corporation and its owner cease to exist, and . . . (2) . . . adherence to . . . separate corporate existence would sanction a fraud or promote injustice." *Kearny v. Sharma*, No. 11-96, 2011 WL 3328431 at *1 (E.D. Ky. Aug. 2, 2011) (citations and internal quotation marks omitted) (quoting *Sudamax Industria e Comercio de Cigarros, Ltda v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841, 848 (W.D. Ky. 2007)).

Defendant does not contest Plaintiff's argument Liberty Wireless and Agorluft are the alter egos of the individual Defendants. Defendant's argument that Kentukcy does not have personal jurisdiction over Liberty Wireless and Agorluft is based on the argument that there is no personal jurisdiction over the individual Defendants. [DE 56 at 7-9]. However, because Kentucky does have personal jurisdiction over Wahlquist, Darner and Crabree, Kentucky also has personal jurisdiction over Liberty Wireless and Agorluft under an alter ego theory.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction [DE 44] is **DENIED**.

Dated this 1st day of June, 2012.



Signed By:
*Karen K. Caldwell* KKC
United States District Judge